IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDWARD ROMERO,      )<br>                     )<br>    **Plaintiff**   )<br>v.                   )<br>                     )<br>UNION PACIFIC RAILROAD COMPANY, )<br>                     )<br>    **Defendant,**  )<br>                     )<br>                     ) | FILED: MARCH  21, 2008<br>NO: 08CV1681 RCC<br>JUDGE MANNING<br>MAGISTRATE JUDGE KEYS<br><br><br>**JURY DEMANDED** |

## COMPLAINT

**NOW COMES** the Plaintiff, **EDWARD ROMERO,** by and through his attorney, John S. Bishof, Jr. of the Law Office of John Bishof, PC, and for his Complaint against the Defendant, **UNION PACIFIC RAILROAD COMPANY**, states unto this Honorable Court as follows:

### JURISDICTION AND VENUE

1. The jurisdiction of this Court under Count I is invoked pursuant to 45 U.S.C. §153(p). This section provides as follows:

> If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises.

2. This Court has subject matter jurisdiction over the Plaintiff's federal claim in Count I pursuant to 29 U.S.C. §1331, since these claims arise under federal statutory law. This Court has supplemental jurisdiction pursuant to 29 U.S.C. § 1367 over Plaintiff's state claim in Count II

because said claim is so related to the claim in Count I that it forms part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in the Northern District of Illinois pursuant to 29 U.S.C. § 1391 (b)(1) and (2) because the actions complained of occurred in this District, and the Defendant owns, operates and controls many miles of track, rail yards and related facilities throughout this District.

## PARTIES

4. Plaintiff, **EDWARD ROMERO,** is now, and at all times relevant hereto, a resident of the Village of Evergreen Park, Illinois, County of Cook, State of Illinois.

5. Defendant, **UNION PACIFIC RAILROAD COMPANY (hereinafter "UP")**, is now, and at all times relevant hereto, a corporation duly organized and existing according to law engaged in business as a common carrier by rail in interstate commerce. The **UP's** principal place of business is located in Omaha, Nebraska. **UP**, at all relevant times, does business as a common carrier by rail in counties under this Court's jurisdiction. The **UP**, owns, operates and controls many miles of track, rail yards and related facilities throughout this District.

6. At all times relevant hereto, Plaintiff, **EDWARD ROMERO**, was employed by Defendant, **UP**, as a yardman.

## COUNT I

1-6.   Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 6 above, as paragraphs 1 through 6 in this Count I.

7. Plaintiff was dismissed from service on or about January 9, 2005.

8. Plaintiff's union, the United Transportation Union (UTU) appealed plaintiff's dismissal with the defendant, which the defendant denied.

9. Because the defendant and the UTU could not reach an agreement regarding the plaintiff's dismissal, a Public Law Board ("PLB"), No. 5124, was convened pursuant to the Railway Labor Act ("RLA") and 45 U.S.C. §153 SECOND. (Award No: 283, Case No. 300, attached hereto as Exhibit A).

10. The arbitration award attached as Exhibit A is a final order.

11. The Plaintiff is entitled to enforce the arbitration award attached as Exhibit A which would allow his return to work and receive back pay for the period following his nine-month suspension until the date of his reinstatement by the defendant.

12. Defendant has not complied with the award.

WHEREFORE plaintiff EDWARD ROMERO prays this Court to:

A. Enter an order against defendant UP that the arbitration award of March 21, 2006 attached hereto as Exhibit A is binding and enforceable against UP and directing UP to comply therewith;

B. Grant plaintiff such other further and appropriate relief as may be necessary to ensure that defendant UP comply with such award with respect to any and all back pay and benefits and;

C. Grant plaintiff its legal fees and costs incurred in bringing this action and any other relief that may be appropriate.

## COUNT II

1-12. Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 12 of Count I, as paragraphs 1 through 12 in this Count II.

13. After the PLB No. 5124 ordered the railroad to reinstate Mr. Romero, he reported for

a return-to-work physical which included a urine and breathalyser test on April 17, 2006.

14. On April 20 or 21, 2006 plaintiff was informed by the Medical Reviewing Officer (MRO) for the defendant *via* telephone that plaintiff "tested positive" on the return-to-duty drug test.

15. Pursuant to federal regulations (49 CFR Part 40.171) and para. 15.0 of the Union Pacific Railroad Company Drug and Alcohol Policy, plaintiff, after notification of a purported positive test, has 72 hours to request that a test be made of the split specimen. The request may be verbal or in writing to the MRO.

16. At the time plaintiff was informed by the MRO of the test results, plaintiff requested the MRO to initiate the process for testing the split specimen. Plaintiff followed up with the request in writing and sent it to the FAX number the MRO gave him on April 21, 2006, well within the 72 hour time limit.

17. Plaintiff made several inquiries to the managers and officers of the defendant including those located at defendant's facility where the drug testing took place regarding the status of his request to test the split specimen.

18. Defendant failed to respond to his inquiries and failed to process his request for the test of the split specimen.

19. Pursuant to the same regulations (49 CFR Part 40.171 and para. 15.0 of the Union Pacific Railroad Company Drug and Alcohol Policy) the defendant's MRO must immediately provide written notice to the laboratory that tested the primary urine specimen directing that laboratory to forward the split specimen to another certified laboratory. This procedure was not complied with by neither the defendant nor its MRO, agent.

20. Defendant undertook a duty to plaintiff when it administered a urine test, that it would

administer the urine test in a just, reasonable, and competent manner and in accordance with the law and its own policy.

21.  Defendant's failure to reasonably follow all protocols established by its Drug and Urine policy and Federal Railroad Administration regulations while conducting the urine test in a just competent manner and in accordance with the law constituted a breach of its duty to plaintiff.

22.  That the Defendant, by and through its agents, servants and employees, was then and there guilty of one or more of the following negligent acts or omissions in violation 49 CFR §40.171 *et seq*, and other laws and regulations:

   a.  failed to have the Medical Reviewing Officer to direct and instruct, in writing, the laboratory that purportedly tested the original specimen to send the split specimen to another qualified laboratory;

   b.  failed to have the Medical Reviewing Officer inform the plaintiff and the Designated Employer Representative (DER) that both tests must be cancelled because the split specimen tested negative (49 CFR §40.187(b);

   c.  failed to have the Medical Reviewing Officer inform the plaintiff and the Designated Employer Representative (DER) that both tests must be cancelled and to begin the process of collecting another specimen for testing because the split specimen was not available for testing (49 CFR §40.187(d);

   d.  failed to follow the procedures for drug testing set forth in 49 CFR §§ 40 and 219;

   e.  other acts of negligence.

23.  As a direct and proximate result of defendant's, negligent administration of the drug test, plaintiff has lost and will continue to lose income, including but not limited to wages, raises,

insurance and other employment benefits. Plaintiff has also suffered severe emotional distress, humiliation about the ability to support himself, as well as disruption of his personal life and damage to his employment reputation.

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against Defendant, UP, for recovery of reasonable damages in an amount greater than One Hundred Thousand dollars ($100,000.00), together with interest thereon, as well as such other damages as may be proven at the time of trial, including but not necessarily limited to, actual, consequential and punitive damages, attorneys fees and cost, and such other and further relief as this Court may deem appropriate.

By:     s/ John S. Bishof, Jr.
John S. Bishof, Jr.

Law Office of John Bishof, Jr.
77 West Washington St.
Suite 1910
Chicago, IL 60602
Ph:312-630-2048
Fax:312-630-2085

# EXHIBIT A

PUBLIC LAW BOARD NO. 5124

Award No. 283
Case No. 300
Carrier File No. 1417287
Organization File No. AL128-577-83/MA

|  |  |
|---|---|
| Parties to Dispute: | UNITED TRANSPORTATION UNION<br><br>-and-<br><br>UNION PACIFIC RAILROAD COMPANY |
| Statement of Claim: | Yardman Edward Romero, for the reinstatement to the services of the Union Pacific Railroad Company (former C. & N. W. Railway Company), with vacation and seniority rights unimpaired, the payment of vacation allowance for time wrongfully discharged, and the scheduling of a vacation period consistent with seniority ranking, in addition to the payment of any and all health and welfare benefits until reinstated, including reimbursement for any medical payments made while discharged, the payment of all Railroad Retirement taxes based on all lost and realized earnings, and reimbursement for any expenses related to the pursuit of alternative employment, the removal of this discipline from the Claimant's record and that he be compensation for any and all lost time with compound interest at 1.5 percent monthly, including compensation for time spent attending an investigation held on January 27, 2005, when charged with an alleged responsibility that "you violated Section 16 (Refusal to Permit Testing) of the Union Pacific Drug and Alcohol Policy (effective January 15, 2004). This happened during a UP follow-up test being administered to you, in |

Public Law Board No. 5124<br>
Award No. 283<br>
Case No. 300<br>
Carrier File No. 1417287<br>
Organization File No. AL128-577-83/MA

accordance with Union Pacific Railroad's Drug and Alcohol Policy (effective January 15, 2004). This event occurred at approximately 14:00 hours on January 9, 2005 at Proviso Diesel Ramp when you refused to submit to a follow-up drug/alcohol test after being instructed to do so by Tom Lally, SMTO and Clint Hillyer, Yardmaster while you were on duty as a switchman/brakeman."

## INTRODUCTION

This Board is duly constituted by agreement of the parties dated March 13, 1991, as amended, and as further provided in Section 3, Second of the Railway Labor Act ("Act"), 45 U.S.C. Section 153, Second. The Board, after hearing and upon review of the entire record, finds that the parties to this dispute are a Carrier and employee representative ("Organization") within the meaning of the Act, as amended.

## FINDINGS

On January 27, 2003, the claimant, switchman Edward Romero, executed a waiver agreement acknowledging he tested positive for an illegal or unauthorized drug or alcohol. The claimant waived his right to a formal hearing, accepted dismissal in connection with the charges of violating GCOR Rule 1.6 and the Carrier's drug and alcohol policy, and agreed to participate in the EAP program and the one-time return to service opportunity under the

Public Law Board No. 5124
Award No. 283
Case No. 300
Carrier File No. 1417287
Organization File No. AL128-577-83/MA

policy. As part of the waiver agreement, the claimant was subject to numerous follow-up drug and alcohol tests.

On January 9, 2005, the claimant was on duty at the Proviso Yard in the Chicago Terminal Complex. At approximately 1:40 p.m., the manager of terminal operations, Thomas Lally, telephoned the tower yardmaster, Clint Hillyer, and instructed him to contact the claimant and have him report to the diesel ramp for a follow-up drug test. The yardmaster telephoned the grievant, and informed him that he had to undergo a follow-up test, but he did not specify a time and place. A short time later, the yardmaster allegedly made a second telephone call and spoke with the claimant. He informed the claimant when he was done with his work to report to the diesel ramp where the drug test would be held. No specific time was provided to the claimant by Hillyer. The claimant never spoke directly to any manager with respect to scheduling the follow-up drug test on January 9.

According to the claimant, he first spoke to Hillyer around 1:35 p.m. and asked whether the crew was done for the day, and Hillyer responded, "yes." Hillyer directed the job foreman to tie up the job between 2:00 p.m. and 2:15 p.m., but no mention was made of a drug test. The claimant maintained that he was only informed during a telephone call at around 1:45 p.m. before he left the property that he had to report for a drug test, and he thought the yardmaster was joking. He lingered around the yard for "15, 20 minutes and nothing happened so I left." (Tr. 41). On a routine basis leading up to the missed test, the claimant would be picked up by a cab or a manager and taken to the test location. It was not

3

Public Law Board No. 5124<br>
Award No. 283<br>
Case No. 300<br>
Carrier File No. 1417287<br>
Organization File No. AL128-577-83/MA

until he received a telephone call later that afternoon around 3:15 p.m. directing him to report to the administration building the next morning that the claimant became concerned, and realized "the severity of the situation."

The claimant telephoned MTO Lally on his cell phone and volunteered to return to the property to submit to a drug test, but he was informed it was too late. MTO Lally confirmed speaking with the claimant around 3:15 p.m. at which time the claimant remarked he "screwed up" and "forgot to go for a follow-up test." Nevertheless, the claimant was denied a right to return to the property for testing as the "follow-up person" had left the property. After consultation with his local chairman, the claimant voluntarily submitted to a drug test the next afternoon on his own initiative. The test results came back negative for drugs and alcohol.

The Board finds that the claimant was contacted while on duty and told that he would be required to submit to a follow-up drug test. It is also evident that he was instructed to do so by the yardmaster upon notification by a manager, MTO Lally. Whether or not the manager must deliver notice of the need to participate in the drug or alcohol test in person, or through his chain of command, is not specified by the Carrier's policy. The Board concludes that clear and unequivocal instructions given to an employee from his or her supervisor upon the express direction of a manager is a logical and reasonable interpretation of the Carrier's Drug and Alcohol Policy, Section 16.3.

In this case, the communication from the yardmaster was garbled in several ways. First, even if the Board were to fully credit the yardmaster's testimony, the directive to report

4

Public Law Board No. 5124
Award No. 283
Case No. 300
Carrier File No. 1417287
Organization File No. AL128-577-83/MA

was given to the claimant in two separate telephone calls. The first call to the claimant was that he had to take a follow-up test, but without specificity as to the location and time. The second call from the yardmaster to the claimant provided a general reporting location and time (the diesel ramp after work) – but nothing more. The Board takes notice of the yardmaster's direct testimony that he could not remember the second call to the claimant (Tr. 29), immediately followed by testimony concerning the substance of a "second call." Finally, testimony by the claimant that he was customarily provided a cab or given a ride by a manager when previously ordered to submit to a follow-up drug or alcohol test stood unrebutted.

A clear and unequivocal notice to the claimant was lacking. However, the claimant was generally aware that the Carrier wanted him to submit to a drug and alcohol test and he was contacted for a test while on duty on January 9, 2005. He waited after completing his work for 10 to 15 minutes while the foreman tied up the job, but then simply left the premises. The Board finds the claimant had an obligation to contact the manager or his supervisor before he simply left the premises when he knew that a follow-up test was imminent.

Upon review of the entire record, the claim is sustained, in part, as set forth in the Award.

### AWARD

The claim is sustained, in part, as follows. The claimant shall be reinstated to service with his seniority rights and all other benefits unimpaired. He shall be assessed a nine-month suspension commencing February 4, 2005. The claimant shall receive back pay for the period following his nine-month suspension until the

5

Public Law Board No. 5124
Award No. 283
Case No. 300
Carrier File No. 1417287
Organization File No. AL128-577-83/MA

date of his reinstatement by the Carrier in accordance with Section 9 of Article IV, Discipline Agreement. The claimant's reinstatement is conditioned upon his full compliance with all pre-return to work requirements, including a drug and alcohol test. The claimant shall act in full compliance with the Carrier's Drug and Alcohol Policy, and participate in EAP following his reinstatement. The Carrier shall comply with the terms of this Award within thirty (30) days from the date of issuance.

_____
Robert A. Henderson, Carrier Member

_____
Michael J. Reedy, Employee Member

_____
Jonathan I. Klein, Neutral Member

This Award issued the _21_ day of _March_, 2006.